**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com
       ykrivoshey@bursor.com

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.C., individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>   v.<br><br>BOTANIC TONICS, LLC,<br><br>               Defendant. | Case No.   2:23-cv-3687<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit against Defendant Botanic Tonics, LLC for deceptive sales practices regarding its "Feel Free" Tonic and Herbal Supplement Capsules.

2.      Defendant tells consumers that its Feel Free products deliver energy, focus and a "social lift."  The key ingredient in the products is kratom.

3.      However, what reasonable consumers do not know, and what Defendant fails to disclose, is that kratom works on the same opioid receptors in the human brain as morphine and its analogs, has similar effects, and has similar risks of physical addiction and dependency, with similar withdrawal symptoms.

4.      When consumers think of opiates and opioids, they tend to think of things like heroin, fentanyl, or morphine; they do not expect a natural product at their local corner store to operate like an opioid, with similar addiction and dependency risks.

5.      Kratom is perniciously addictive – on a whole different level than caffeine or nicotine – and it has sunk its hooks into tens of thousands of unsuspecting consumers and caused them serious physical, psychological, and financial harm.

6.      Defendant intentionally and negligently failed to disclose these material facts anywhere on its labeling, packaging, or marketing materials, and it has violated warranty law and state consumer protection laws in the process.

7.      Defendant relies on its Products' innocuous packaging and the public's limited knowledge about kratom and its pharmacology to get users addicted, while reaping profits along the way.  Reasonable consumers do not expect the innocuous bottles of Feel Free tonic, which can purchased at convenience stores, to be like an opioid with the same addictive potential of morphine and its analogs.  Defendant relies on this ignorance and does nothing to correct it.

8.      As a separate and independent basis for liability, the products at issue here are illegal to sell because they are adulterated dietary supplements.

Accordingly, Plaintiff and class members are entitled to a full refund for all purchases made.

9.      Because this action concerns issues of addiction and medical status, Plaintiff is filing under his initials for the sake of personal privacy.  Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom.  Since addiction issues still wrongly carry somewhat of a stigma, Plaintiff is filing this matter anonymously but will reveal his name as necessary to the Court under seal.

## PARTIES

10.      Plaintiff C.C. is domiciled and lives in New Jersey.  Plaintiff has purchased Botanic Tonic products periodically since approximately December 2021. When Plaintiff first started purchasing the products, he reviewed and relied on the product labeling, which did not disclose the addictive nature of the Feel Free tonic, or its active ingredient kratom.  If the product had included a warning about the addictive nature of kratom, Plaintiff would not have purchased it. Unfortunately, Plaintiff has become very addicted to Feel Free and is in the process of trying to wean himself off of it so as to minimize the serious withdrawal symptoms.

11.      Defendant Botanic Tonics, LLC, is a Delaware corporation with its principal place of business in Santa Monica, California.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

13.      This Court has general jurisdiction over Defendant because Defendant is a California corporation and maintains its principal place of business within this District.

14.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

### FACTUAL ALLEGATIONS

**Defendant's Labeling of Feel Free Tonics And Supplements Has The Tendency Or Capacity To Deceive Or Confuse Reasonable Consumers**

15.     **Products at issue**: Defendant manufactures, distributes, advertises, and sells Feel Free branded Tonics and Herbal Supplement Capsules.  The products are sold online at various websites such as Amazon.com as well as in brick-and-mortar stores like 7-Eleven.

 

16.     **Relevant time period**.  The omissions made here were consistently made at all times during the last four years, at least.

17.     **Omissions at issue.**  Defendant had a duty to disclose each of the following, but failed to do so on the product packaging:

(a)    Kratom is an addictive opioid;

(b)    The amount of kratom in each of Defendant's products is sufficiently high to create a material risk of addiction, and the illnesses that are associated with addiction and withdrawal.

(c)    The products are adulterated dietary supplements within the meaning of 21 U.S.C. § 321(ff) and § 342(f)(1)(B), and therefore are illegal to sell.

18.    There have been no material changes to the product packaging during the relevant period.  In particular, the packaging of Feel Free tonics and supplements have never disclosed the dangers of kratom generally, or the dangers of the amount of kratom in the products specifically, and have never disclosed that the products are illegal to sell.

19.    Defendant intended that consumers would read and rely on the product packaging, and the omissions at issue here would influence consumers' purchasing decisions.

20.    Defendant knew that kratom is dangerously addictive generally, knew that the amount of kratom in the products was dangerously addictive specifically, and knew that its products were illegal to sell.  In operating its business, Defendant would have interacted with growers and distributors who have disclosed addictive nature of kratom to it.  Defendant's knowledge is further established by the fact that it acknowledges the addictive nature of its product on its website—though it deceptively downplays the risk by saying "anything that makes you feel good can become habit-forming."  As tepid and misleading as this disclosure is, nothing similar is found on the product packaging.

21.    **<u>Why/How the omissions at issue here are material and have the tendency or capacity to deceive or confuse reasonable consumers.</u>**

22.    The first reported use of Kratom in the scientific literature dates back to 1836 when it was noted that the leaves of the tree were used by Malays as a substitute for opium.

23.    The plant's leaves are harvested, dried, and crushed into a fine powder which is then packaged and sold.  The drug can also be extracted into a liquid formulation, colloquially called a kratom "shot."

24.    Kratom includes chemicals called "alkaloids," which produce psychoactive effects when ingested.

25.    The primary alkaloids in kratom plant leaves responsible for the kratom "high" are Mitragynine[1] ("MG") and 7-hydroxymitragynine ("7-MG").

26.    MG and 7-MG exhibit a wide variety of pharmacological effects.  For example, a low dose (0.5 grams to 3 grams) of kratom is typically described as stimulating or energizing, whereas a high dose (3+ grams) is described as euphoric, sedating, and analgesic.  On the whole, however, kratom's high is not overwhelming like it would be for a "hard" drug like cocaine or heroin – it is somewhat more subtle, but its effects are nonetheless substantially similar to opiate-based painkillers such as hydrocodone and oxycodone in sufficient dosages.

27.    MG and 7-MG produce such a wide spectrum of effects because they interact with many different receptors in the brain.  Studies have shown that MG and 7-MG interact with alpha-2 adrenergic receptors (adrenaline), D2 dopamine receptors, and the serotonin receptors 5-HT2A and 5-HT2C, all of which contribute to the drug's effects.

28.    MG and 7-MG also interact with the mu-opioid receptor.

29.    The mu-opioid receptor is known as "the gateway to addiction" because it is the receptor which all opiates/opioids interact with to produce the classic opiate high: euphoric, sedating, and analgesic.  This means that MG and 7-MG interact with the primary receptor that heroin and oxycodone interact with.

30.    There are other opioid receptors, but the mu-opioid receptor produces the most "hedonic" or habit-forming effects such as euphoria and analgesia.

---

[1] Pronounced "Mitra-Guy-Neen."

31.     Mitragynine and 7-hydroxymitragynine were found to be more potent to the mu-opioid receptor than morphine via oral administration, according to one 2004 study.

32.     Kratom is therefore considered by health professionals to be similar to an "opioid" and a "quasi-opiate."

33.     The notion that kratom is substantially similar to an opioid, and a quasi-opiate, is reaffirmed by a few facts.  First, kratom's effects are very similar to those of other opioids.  Second, when administered, kratom alleviates opioid withdrawal symptoms.  Third, repeated use of kratom in itself results in opioid withdrawal symptoms.

34.     All substances which act on the opioid receptors carry a very high risk of addiction, and kratom is no exception.

35.     Addiction occurs when an opioid is ingested on a regular basis.  Over time, the user develops a tolerance to the drug, requiring increased dosages to get the same effects as a lower dose used to have.  As the dosages go up, the body becomes dependent on some amount of the drug to feel normal.  When the drug is suddenly taken away, the user feels much worse than before they started taking the drug: this is what is known as withdrawal.

36.     Opioids are addictive not just because of the pleasurable effects that they produce, but because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug.  The tragedy of addiction is that users want to stop, but they cannot.

37.     The symptoms of kratom withdrawal are very similar to those of traditional opiate withdrawal.  Such symptoms include: irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise.

38.     Users typically start substances like kratom because of how good it makes them feel, but, once addicted, they use them to avoid the pain of withdrawal. It no longer is about getting high, but about not feeling "sick."

39.     What's more, because kratom does not produce a debilitating "high" like cocaine or heroin, it is very easy for users to take the drug every day without feeling as though they are developing a drug addiction or harming themselves.  This makes kratom a particularly insidious drug because addiction can sneak up on unsuspecting users and can hold them in its grip despite their best efforts to stop using.  Long term users of kratom have reported experiencing depression, anxiety, anhedonia, and reduced sex drive.

**Defendant's Products Are Adulterated Dietary Supplements That Are Illegal To Sell**

40.     Under 21 USC § 321(ff)(1), a "dietary supplement" includes products intended to supplement the diet that contain "an herb or other botanical," including in concentrated or extracted form.  It also includes a product that is "intended for ingestion in tablet, capsule, powder, softgel, gelcap, or liquid form. *Id.* at § 321(ff)(2); § 350(c)(1)(B)(i).

41.     The products at issue here are dietary supplements within the meaning of § 321(ff)(1).

42.     Under 21 USC § 342(f)(1)(A), a dietary supplement shall be deemed to be adulterated if it contains an ingredient that presents an unreasonable risk of illness under ordinary conditions of use (and no contrary conditions of use are suggested or recommended on the labeling, as is the case here).  A dietary supplement shall also be deemed to be adulterated if it contains an ingredient for which there is inadequate information to provide reasonable assurances that such ingredient does not present an unreasonable risk of illness or injury.  *See* § 342(f)(1)(B).

43.     The products at issue here are adulterated within the meaning of § 342(f)(1)(A), or alternatively within the meaning of § 342(f)(1)(B).

44.     Under 21 USC § 331(a), it is illegal to sell adulterated dietary supplements.  Therefore, the products at issue here are illegal to sell.

45.     In May 2023, U.S. Marshals, along with U.S. Food and Drug Administration investigators, seized more than $3 million worth of Defendant's products containing kratom after the U.S. Attorney's Office in Tulsa filed a civil forfeiture complaint on behalf of the FDA.

46.     The complaint alleged that Defendant's products were adulterated dietary supplements, the consumption of which can lead to serious health issues including respiratory depression, vomiting, nervousness, weight loss, and constipation.  The complaint also alleged that withdrawal symptoms may include hostility, aggression, jerky limb movements, and other problems.

47.     Plaintiff and class members would not have purchased the products if they had known that the products were illegal to sell or that they were extremely addictive.

48.     Given that the products are illegal to sell, Plaintiff and class members are entitled to a full refund.

## CLASS ALLEGATIONS

49.     ***Class Definitions***. Plaintiff brings this action pursuant to on behalf of classes of similarly situated individuals, defined as follows:

> All persons nationwide who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, purchased Botanic Tonic kratom products (the "Class")

> All Class members in New Jersey who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased Botanic Tonic kratom products (the "New Jersey Class").

50.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by

amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

51. Specifically excluded from the Class are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

52. **Numerosity.** Members of the class are so numerous that their individual joinder herein is impracticable. On information and belief, each class or subclass includes thousands of consumers. The precise number of class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

53. **Commonality and Predominance.** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    a. whether the labels on Defendant's Products have the capacity to mislead reasonable consumers;

    b. whether Defendant knew that kratom is a highly addictive substance;

    c. whether Defendant's conduct violate the consumer protection statutes at issue in this complaint

    d. whether Defendant's conduct alleged herein constitutes unjust enrichment;

    e. whether Defendant's conduct constitutes negligent omission;

    f. whether Plaintiff and the Class are entitled to damages and/or restitution;

    g. whether Plaintiff and the Class are entitled to attorneys' fees and costs.

54.     ***Typicality.***  The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Products are highly addictive and akin to opioids.

55.     ***Adequacy***.  Plaintiff will fairly and adequately protect Class members' interests.  Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

56.     ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

57.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

58.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

59.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## FIRST COUNT
### Violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.

60.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

61.   Plaintiff brings this claim individually and on behalf of the members of the proposed classes against Defendant.

62.   The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act."  Cal. Bus. & Prof. Code § 17200.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

63.   As alleged below, Defendant has committed unlawful, fraudulent, and/or unfair business practices under the UCL by: (a) representing that Defendant's Products have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); (c) selling addictive substances to unsuspecting consumers and profiting from their addiction; and (d) failing to disclose that its Products pose a serious risk of addiction;

64.   Defendant's conduct has the capacity to mislead a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.

65.   Plaintiff brings this claim under all three liability prongs of the UCL.

66.   Defendant's conduct has injured Plaintiff and class members because they paid money for a product that they would not have purchased or paid more than they would have but for Defendant's failure to disclose the addictive nature of its Products and that they were being sold illegally.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers

reasonably rely on Defendant's labels, and thus also its omissions, consumers could not have reasonably avoided such injury.  *Davis v. Ford Motor Credit Co*., 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

67.     Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

68.     Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

69.     Plaintiff seeks all available relief under the UCL.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SECOND COUNT
### Violation of California's Consumers Legal Remedies Act,
### Cal. Civ. Code §§ 1750, *et seq.*
### (Injunctive Relief Only)

70.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

71.     Plaintiff brings this claim individually and on behalf of class members against Defendant.

72.     Plaintiff and Class Members are consumers within the meaning of Cal. Civ. Code § 1761(d).

73.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or she does not have."

74.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

75.     Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

76.     Defendant violated Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by intentionally and misleadingly representing that its Products are "all natural" and by failing to disclose that its Products are addictive, a fact which is material to reasonable consumers.

77.     Defendant's misrepresentations and omissions deceive and have a tendency and ability to deceive the general public.

78.     Defendant has superior knowledge of kratom's addictive nature, which was not known to Plaintiff or class members

79.     Plaintiff and class members have suffered harm as a result of these violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750,

1   *et seq.* ("CLRA") because they have incurred charges and/or paid monies for the

2   Products that they otherwise would not have incurred or paid had they known that

3   kratom is addictive and causes withdrawals.

4   80.   Plaintiff seeks all available relief under the CLRA, except actual

5   damages. Should Defendant fail to respond to notice within 30 days, Plaintiff will

6   amend this Complaint to seek actual damages under the CLRA as well.

### THIRD COUNT
**Breach of Implied Warranty**

7
8
9   81.   Plaintiff realleges and reincorporate by reference all paragraphs alleged

10  above.

11  82.   Plaintiff brings this claim individually and on behalf of class members

12  against Defendant.

13  83.   Plaintiff asserts this cause of action under New Jersey law, or

14  alternatively, under California law.

15  84.   Defendant, as the designer, manufacturer, marketer, distributor, and/or

16  seller of the Products, impliedly warranted that kratom is not addictive and does not

17  cause opioid-like withdrawal symptoms because it did not provide a of disclosure on

18  the Products' packaging stating otherwise.

19  85.   Defendant breached its warranty implied in the contract for the sale of

20  its kratom Products because the Products could not pass without objection in the

21  trade under the contract description: the kratom Products were not adequately

22  contained, packaged, and labeled as per Defendant's contract with Plaintiff and

23  members of the Class, and the Products do not conform to the implied affirmations

24  of fact made on the marketing and packaging for the Products that the Products are

25  not addictive and do not cause withdrawals.  U.C.C. §§ 2-313(2)(a), (e), (f).  As a

26  result, Plaintiff and members of the Classes did not receive the goods as impliedly

27  warranted by Defendant to be merchantable.

28

86.    Plaintiff and members of the Class purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

87.    The kratom Products were defective when they left the exclusive control of Defendant.

88.    Plaintiff and members of the Class did not receive the goods as warranted.

89.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Class have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was addictive and could cause opioid-like withdrawal symptoms; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

## FOURTH COUNT
### Unjust Enrichment

90.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

91.    Plaintiff brings this claim individually and on behalf of class members against Defendant.

92.    Plaintiff asserts this cause of action under New Jersey law, or alternatively, under California law.

93.    To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

94.    Plaintiff and the Class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

95.    Defendant knew of the benefit conferred on it by Plaintiff and the Class members.

96.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were addictive and similar to opioids.  This caused injuries to Plaintiff and members of the Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

97.     Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the Class members.

98.     Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

99.     Plaintiff and the Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

100.    As a direct and proximate result of Defendant's actions, Plaintiff and the members of the Class have suffered in an amount to be proven at trial.

101.     Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.  Putative class members lack and adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## FIFTH COUNT
### Fraud by Omission

102.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

103.    Plaintiff brings this claim individually and on behalf of class members against Defendant.

104.    Plaintiff asserts this cause of action under New Jersey law, or alternatively, under California law.

105.   Defendant failed to disclose that (1) kratom is addictive and can cause opioid-like withdrawal; (2) its products contain sufficient amounts of kratom to create a material risk of addiction; and (3) the products were illegal to sell.

106.   Defendant knows that kratom is addictive because it interacts with kratom vendors and has been made aware of user reports.

107.   Defendant knows that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers.

108.   The average reasonable consumer in the kratom purchasing context does not know that kratom is addictive and cannot reasonably access that information.

109.   Defendant therefore had a duty to Plaintiff and the Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

110.   Consumers reasonably and justifiably relied on Defendant's omission because it is reasonable to assume that a product which is addictive like an opioid would bear a warning.

111.   As a result of Defendant's omission, Plaintiff and the Class members paid for kratom Products they may not have purchased, or paid more for those Products than they would have had they known the truth about kratom.

## SIXTH COUNT
### Negligent Misrepresentation

112.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

113.   Plaintiff brings this claim individually and on behalf of class members against Defendant.

114.   Plaintiff asserts this cause of action under New Jersey law, or alternatively, under California law.

---

115.   Defendant misrepresented that its kratom Products have attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

116.   Defendant knew or should have known that kratom is addictive because it interacts with kratom vendors and has been made aware of user reports and scientific studies.

117.   Defendant knew or should have known that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers.

118.   The average reasonable consumer in the kratom purchasing context does not know that kratom is addictive and cannot reasonably access that information.

119.   Defendant therefore had a duty to Plaintiff and the Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

120.   Consumers reasonably and justifiably relied on Defendant's omission because it is reasonable to assume that a product which is addictive like an opioid would bear some kind of a warning.

121.   As a result of Defendant's omission, Plaintiff and the Class members paid for kratom Products they may not have purchased or paid more for those Products than they would have had they known the truth about kratom.

## SEVENTH COUNT
### Violation Of The New Jersey Consumer Fraud Act ("NJCFA")

122.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

123.   Plaintiff brings this claim individually and on behalf of class members against Defendant.

124.   Plaintiff and class members have suffered an injury in fact and lost money or property as a result of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA").

125.   The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ."  N.J. Stat. Ann. § 56:8-2.

126.   Plaintiff and class members are consumers who purchased Defendant's kratom products.

127.   Defendant engaged in unlawful conduct by deliberately and knowingly failing to disclose the dangers associated with its products, and by failing to disclose that the products are illegal to sell.

128.   Defendant intended that Plaintiff and class members rely on Defendant's omissions, so that they would purchase the products at issue here.

129.   Accordingly, Defendant has engaged in unfair and deceptive trade practices.

130.   Defendant's acts and practices described herein offend established public policy because of the harm they cause to consumers outweighs any benefit associated with such practices, and because Defendant fraudulently concealed the unsafe nature of its products.

131.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

132.   By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has committed one or more unlawful acts in violation of the NJCFA.

133.   Plaintiff seeks all available relief under the NJCFA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.   For an order certifying the Class and naming Plaintiff as the representative of the class or classes

b.   For an order declaring Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.   For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demand a trial by jury on all claims so triable.

Dated:  May 15, 2023                      Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:   _/s/ Yeremey Krivoshey_
         Yeremey Krivoshey

Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com
            ykrivoshey@bursor.com

Matthew R. Mendelsohn
(*pro hac vice* forthcoming)
**MAZIE SLATER KATZ &
FREEMAN LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
E-mail: mrm@mazieslater.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Yeremey Krivoshey, declare as follows:

     1.    I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

     2.    The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant is headquartered in this District.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

     Executed on May 15, 2023 at Louisville, KY.


                     */s/ Yeremey Krivoshey*
                     Yeremey Krivoshey